## Slater's Estate.

*Wills—Charity—Void bequest—Remainderman—Award of income—Jurisdiction—Parties—Act of April 26, 1855.*

1. A testator gave the residue of his estate to a trustee to pay certain legacies, an annuity of $1,500 to his widow during her life or widowhood out of the net income, and to establish a home for indigent old ladies out of his unsold real estate and any accumulated income. He directed that his trustee should keep his entire estate including proceeds of sale of real estate intact, subject to the payment of the legacies and annuity, and invest and reinvest the balance after such payments. He made no disposition of the residue of the principal. The widow elected to take under the will. At the audit of the second account of the trustee, it appeared that the balance of income shown by the account was required for the protection of the widow's annuity, because of the loss by fire of certain realty belonging to the estate. The heirs and next of kin appeared at the audit and disputed the validity of the charitable gift, and objected to the balance of the account being awarded to the trustee, and asked that it be awarded to them on their giving security. *Held,* (1) that the heirs and next of kin had a standing to appear and be heard at the audit; (2) that the court was without jurisdiction to pass upon the question of the validity of the charitable bequest before final distribution; (3) that the court did not err in awarding the balance to the trustee in the absence of anything in the record to show that such balance would not be safe in his hands.

2. The proper time for the determination of the question whether a testamentary charitable bequest is void, is when the question of the distribution of the estate arises.

Argued Feb. 19, 1919. Appeals, Nos. 228 and 229, Jan. T., 1919, by Bessie Slater Allen and Geo. W. Slater from decree of O. C. Schuylkill Co., Nov. T., 1917, No. 6, dismissing exceptions to adjudication in Estate of Henry P. Slater, deceased. Before STEWART, MOSCHZISKER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Exceptions to adjudication. Before WILHELM, P. J. See Slater v. Moyer, 245 Pa. 60.

The court dismissed the exceptions. Bessie Slater Allen and George W. Slater appealed.

*Errors assigned* were in dismissing the exceptions to the adjudication.

*Geo. M. Roads,* with him *Carl H. Wagner,* for appellants.—The heirs make no claim to possession of the estate, at this time, but what they do claim is that they are the owners of the entire residue, subject to the rights of the widow and creditors, if any, and, "ex necessitate," have a right to protect that estate from the time it was created, viz, from the death of the testator; and it follows that the court is bound, when the standing of the heirs to file exceptions is challenged by the accountant, to decide their status once and for all, otherwise the trustee would be in position to practically confiscate the property of the residuary legatees, during the lifetime or nonmarriage, as is the case here, of the widow; the heirs being required to stand by, impotent to protect their property against possible waste, extravagance, or depletion: Carson's Est., 241 Pa. 117; Shollenberger's App., 21 Pa. 337; Postlethwait's App., 68 Pa. 477; Bayley's App., 60 Pa. 354.

*Daniel W. Kaercher,* with him *Roscoe R. Koch,* for appellees.—The court below followed precisely the ruling

by the Supreme Court in Slater v. Moyer, 245 Pa. 60, and to sustain what has been so well said there, no further argument is required.

OPINION BY MR. JUSTICE STEWART, May 21, 1919:

These two appeals are from the same adjudication and raise precisely the same questions. Inasmuch as appellants stand in the same right, we shall consider the appeals as one. Each asks for a final adjudication of two separate and distinct questions; one relating to a matter now pending in the orphans' court and there awaiting decision, the other a strictly collateral question not at issue, and in regard to which any attempted adjudication in this proceeding would therefore be inconclusive, there being no subject-matter before the court on which it could presently operate. The two matters stand in no relation to each other except that they arise out of the same estate. These are the general facts: Henry P. Slater, a resident of Schuylkill County, died December 2, 1912, testate; his will has been duly probated; he left surviving him a widow, who has accepted the provisions of the will, and two children by a former wife, a son and daughter, to each of whom the will gives a legacy of $5, and which both have renounced; the entire balance of his estate, consisting chiefly of real property, the testator gives by his will to Joseph W. Moyer, whom he appointed executor and trustee, upon the following trusts: (1) the payment of his debts and funeral expenses, (2) the payment to each of his children a legacy of $5, (3) the payment to his widow during her life or widowhood an annuity of $1,500 out of the net income of his estate, (4) the erection of a church window as a memorial to his father and mother, and (5) the establishment out of his unsold real estate and any accumulated income of a "Home for Indigent Old Ladies." The will is silent as to any residuum; therefore, if any such residuum should exist or for any reason occur, the testator dying intestate as to it, the will would give it to his right heirs, in other

words, to his two children who are the respective appellants here. The appeals are from the adjudication on the second account filed by the executor awarding the balance thereof of $4,802.47 to the executor, Joseph W. Moyer, for the purpose of providing the annual income of $1,500 to the widow under the provisions of the will. The appellants' contention is that the charitable bequests contained in the will are void, on the ground that one of the two attesting witnesses to its execution, Joseph W. Moyer, the executor and trustee, was not "a disinterested witness," and that therefore as to it, an intestacy results, and under the provisions of the law, Act of 1885, Section 11, there being here no residuary legatee or devisee, so much of the estate, in such case, goes to the heirs of the decedent. This would be entirely correct assuming the charitable bequests to be void. The auditor and the court below were in entire agreement that the balance due from the executor on the account filed should be reserved to secure to the widow the payment of the annuity given her by the will. We do not understand that this finding is objected to on any other ground than that, if appellants' contention with respect to the invalidity of the charitable bequests were to be sustained, so much of the estate as was devoted to the charities became vested in the heirs at law, not at the time of such adjudication, but immediately upon the death of the testator, for it was then, if ever, as to the charitable bequests, that the will was void; and that testator's children have therefore a vested interest in the estate, and have a right to protect the estate from the time it was created. The right of appellants as heirs at law of the decedent to appear in the proceeding before the auditor and the court is not to be questioned, whether their purpose in so doing, as they claim, was to protect the estate, or to ask a determination by the court of the questions they raised as to the failure of the charitable bequests for the reasons indicated. So much may be conceded. The jurisdiction of the court was not only ample but exclusive with respect to both

features of the controversy, and the standing of the appellants to urge their present contention upon the consideration of the court on their own behalf is no less clear; but the power of the court in the exercise of its legal discretion to decree as it did upon the balance appearing to be due on the account of the executor, and declining in this particular proceeding to pass upon the question of the failure of the charitable bequests in his will is equally clear. As to the first; it is a fact found by the court and not contradicted in any way, but conceded, that the balance on the account was required for the protection of the widow's annuity of $1,500, because of the destruction by fire of certain buildings from which the principal income was derived, a bequest entirely valid and enforceable and wholly independent of and unrelated to the charitable bequest. The objection urged to the action of the court, in awarding this balance to the legal representative of the decedent and his estate, is that it was not conditioned on his giving security for the money, whereas the heirs asked to have the fund awarded them "conditioned on the protection of the widow's rights and those of creditors." It is a sufficient answer to this to say that at no time in the proceeding in the court below was the insufficiency of the security suggested, nor is it now alleged. There is nothing in the case that indicates an improper exercise by the court of its discretion in this matter. In what we have already said we have recognized the standing of the appellants to be heard in the proceeding, and therefore there is nothing in the adjudication to warrant the fear expressed that except as to the question of the validity of the charitable bequests as now determined "the heirs will be required to stand by, impotent to protect their property against possible waste, extravagance or depletion."

As to the second; our authorities are all in accord that the proper time for the determination of the question whether the testamentary charitable bequest is void is when the question of distribution of the estate arises.

Technically the proceeding here, where the demand for determination of the question is made, may be a distribution proceeding; but in fact no portion of the estate is distributed under the decree. While the decree segregates the balance of the account to meet a contingency which, except as provided against, would most likely disappoint the widow in her annuity, the amount set apart yet remains an integral part of the estate. Final distribution of the fund yet remains to be made. This was in exact accord with the provisions of the will which gives to the trustee the full and exclusive control and management of the entire estate until the widow's interest is terminated by her remarriage or death, to conserve the same for the protection of such interest. Carson's Est., 241 Pa. 117, so much relied on by the appellants, decides nothing to the contrary of what we have here said. Counsel overlook the clear distinction between the cases. In the earlier cases the charitable bequest so challenged was of the testator's entire residuary estate in regard to the expenditure of which he gave minute and express directions. The register was there asked to deny probate of the will on the ground that it had not been executed in accordance with the requirements of the Act of April 26, 1855. This he declined and admitted the will to probate. An appeal was taken to the orphans' court and the decree of the register was sustained. On appeal to this court, the only question at issue was the right and power of the register and the orphans' court to refuse probate of a will otherwise properly executed on the ground that it contained a charitable bequest and had not been attested by two disinterested witnesses. We held, quoting from the opinion delivered by the present Chief Justice, "The probate of a will without regard to its provisions is one thing; distribution of the estate of the testator in accordance with its terms is another. Distribution is for the court alone, and, on the distribution, and not before, is the validity of the provisions of the will to be passed upon." For which conclusions many authorities are

there cited. This follows at the conclusion of the opinion, and it is upon the expression of view here contained that appellants chiefly rely, "Whether the assailed charity is void, because the will had not been so executed, is a question to be determined on distribution, and an opportunity will be given these appellants to raise it and have it passed upon on the adjudication of the second account. The court below can then be asked to determine whether the directions of the testator as to his residuary estate are to be carried out during the life of his widow. There is no reason why the question of the validity of the charity should be postponed until after her death. If it is void, it was void from the time of the testator's death, and, if so, what was intended for it will go, not as his will has directed, but where the Act of 1855 declares it shall go." It is quite evident that what is there said was not intended as a statement of general rule applicable to all cases where the validity of a testamentary charity is challenged. What the court had in mind was the particular will then under consideration. No reason was discoverable from the testator's will why, should the charity fail, distribution of the estate should be delayed until after the widow's death. The heirs upon whom the will would cast the inheritance were all known and no provision or direction of the will, barring those relating to the contemplated charity, would be defeated or disappointed. Here it is far otherwise. This testator, by the second item of his will, gave his entire residuary estate, after the payment of his debts and funeral expenses and specific legacies, to his executor, as trustee, certain defined trusts, one of which was to pay out of the net income therefrom to his wife the sum of $1,500 per annum "for and during her natural life or so long as she remains my widow." Then by item seven he directs, "Subject to the payment of my debts, funeral expenses and specific legacies as aforesaid, I order and direct my herein mentioned executor and trustee to keep and maintain my entire estate, real and personal, including the

proceeds of my unimproved property, if sold by him, intact, and to invest, rent, manage and keep my improved real estate in good condition and repair, always to the best interest and advantage of my estate, and to collect and invest and reinvest the interest and income thereof and any balance of interest or income remaining after the payment of bequests, expenses, insurances, repairs and installments herein by me directed to be paid my wife, such balance shall from time to time be added to the body or corpus of my estate and be invested and reinvested as part of the principal thereof." Following this provision we find this further direction, "Subject to the foregoing provisions of this, my will, after the death of my said beloved wife, or in the event of her not accepting the provisions of this my will in her behalf or for her benefit, or in the event of her marrying again, then and in either such event I give, bequeath and devise all the rest, residue and remainder of my said estate, real and personal, whatsoever and wheresoever, to my herein named executor as trustee and his successors in trust as aforesaid, with full power and authority to carry out and execute"; then follows a description of the charitable trust, the sufficiency and legality of which these appellants would now assail. These provisions are too plain to admit of misunderstanding as to their purpose. They are the full equivalent of an express direction that the trust created by the will covering the entire estate was to continue until the remarriage or death of the widow; it was upon the happening of one or the other of these events that the charitable bequests, in what remained, were to take effect. Failure of the charitable bequests could have no effect on these earlier provisions of the will,—the creation of the trust and the directions in regard to its continuance. This was made very clear in Slater v. Moyer, 245 Pa. 60, where in an action of ejectment these appellants sought to recover possession of the real estate of which the testator had died seized, on exactly the ground on which they here rely to support their present contention, the

legal insufficiency of the attestation of the will under the
Act of 1855. In the opinion in that case delivered by the
same judge who delivered the opinion in Carson's Estate,
supra, this is said: "The first piece of evidence offered by
the plaintiffs was the will of their father, and when they
closed their case a nonsuit was asked for on the ground
that they had themselves shown title or right of posses-
sion in the defendants. This was clearly so, and the non-
suit should have been granted solely on the ground that,
under the will of the testator, probate of which could not
have been denied, the title to his real estate at the time
this action was brought was in his executor and testa-
mentary trustee and the right to the possession of it in
the defendants. Instead of entering the nonsuit on this
plain and well understood legal proposition, the trial
judge, in passing upon the motion to enter it, said plain-
tiffs were entitled to go to the jury if J. W. Moyer was an
interested witness to the execution of the testator's will
within the meaning of the Act of 1855, but, after pro-
ceeding to give his reasons why he regarded Moyer as a
disinterested witness, he held that the will had been val-
idly executed and that the plaintiffs could not, therefore,
recover. The question which the trial judge undertook
to decide in passing upon the motion for a nonsuit was
not in the case, and his misconception of the situation
seems to have been followed by the court in banc in re-
fusing to take off the nonsuit. The will had been exe-
cuted by the testator in the presence of two witnesses,
had been duly admitted to probate and was a valid dis-
position of his estate for the purpose of paying his debts
and funeral expenses and the annuity to his widow.
Whether its provision creating the charity must fail by
reason of his disregard of the statutory requirement as
to the execution of a will bequeathing or devising an
estate in trust for religious or charitable uses, is an en-
tirely different question, to be passed upon when it arises.
A will containing, among other provisions, one for reli-
gious or charitable uses is not void, under the Act of

1855, if it is not attested as that act requires; it is only the religious or charitable bequest or devise that fails; (here follows numerous citations of authority). The question of the right of the appellants to the possession of the real estate left by their late father cannot arise during the time he has directed his executor to hold it for the purpose of providing an annual income for his widow. The net income from it may or may not be at all times sufficient to pay her the annuity of $1,500, but, without regard to this, until she remarries or dies, the title to all of her husband's real estate, and the right of possession of the same, subject to the leases made by him, will be in his executor. Upon the remarriage or death of the widow, appellants may, in a proper proceeding, raise the question of their right to take the real estate of which their father died seized, on the ground that his disposition of it to a charity is void under the statute. If the charity be then declared void, they will be entitled, as heirs of their father, to take the land intended for it." The law governing the present case could not be more clearly expressed than it is here, and the opinion answers negatively every question raised by the appellants in their present contention. It is too patent to call for any discussion that what is there said as to the real estate applies with equal force and effect to the personal estate. For the reasons we have stated, the decree appealed from is affirmed and the exceptions are dismissed at the costs of the appellants. Like judgment to be entered in both cases.