GANGLOFF, P. J.,
Audit of the Fourth Account of Joseph W. Moyer, Executor of and Trustee under the last will and testament of said decedent.
The above account came before the court for audit on Monday, September 18, 1933, and Thursday, November 2, 1933, at 10:30 A. M., pursuant to due and legal notice.
From the evidence submitted and the record in the matter, we find as follows :—
*41 I.Henry P. Slater died on the 23rd day of December, 1912, testate, leaving to survive his widow, Clara K. Slater, and his two children by a former marriage, George W. Slater and Bessie Slater.
II.The account of the executor, as such, was filed and disposed of a number of years ago and we now have before us the Fourth Account of the trustee named in the will and also an additional or Supplemental Account of the same trustee covering the period from the date of the Fourth Account. ■ These two accounts have been heard together.
III.The Fourth Account of the trustee shows a balance of principal, personal property, of $285.00, consisting of household furniture now in the possession of the widow, life tenant under the will; a balance of real estate, principal, amounting to $64,793.82, invested in mortgages, and a balance of income from real estate due the accountant of $156.58. The Supplemental Account shows a balance of principal arising from personal estate of $285.00, being the same shown in the Fourth Account, while in the real estate, principal account, there is a balance shown to be due the estate of $64,637.24. This latter amount appears to be an error. No changes are shown as compared with the balance in the Fourth Account and manifestily the balance should be the same, or $64,793.82. In the real estate, income account, there is a balance shown to be due the estate of $776.36, from which should be deducted the deficit in the Fourth Account of $156.58, leaving a net balance due the estate in the income from real estate account of $619.78. At the audit of the two accounts the accountant asked for an additional debit of $759.98 in the form of income from real estate received from the Schuylkill Trust Company on August 16, 1933, and the following additional credits:—

*42

The additional debit and the additional credits above mentioned are allowed, and reflecting these additional items, we find that there is a balance due the estate in the income from real estate account of $432.86. The Prothonotary presents a bill for $2.00 for searches against the real estate and the Recorder of Deeds a bill for $1.00 for searches in that office. These claims should be paid and are allowed as credits against the income from real estate account, thereby reducing that balance to $429.86.
By way of summary, the balances now in hands of accountant are: — personal property principal, consisting of household goods in possession of the widow under the terms of the will, valued at $285.00; real estate principal $64,793.82, being proceeds realized from sales of real estate, now invested in mortgages; and real estate income, being income from investments of real estate principal, of $429.86 in cash.
The trust created by the will for the widow has not terminated and, therefore, the duties of the trustee continue. Ordinarily then a decree of confirmation of the account would be in order but the trustee now presents a petition asking that distribution be made presently (1) upon the ground that the charitable bequest in the will cannot be carried out because of inadequate funds and (2) upon the ground that all parties in interest agree that distribution shall be made presently, thereby terminating pending litigation?
The estate of Henry P. Slater, the decedent here, originally consisted almost entirely of real estate. The present account and the balances there shown reflect this. The real estate consisted of vacant land in the form of building lots and improved properties including his homestead on North Second Streets in this City of Pottsville. The homestead is occupied by decedent’s widow, Clara K. Slater, and she has occupied it continuously since the death of her husband. The principal revenue producing property was a large public hall and 'office building on the main business street of Pottsville and this was destroyed by fire in 1916. $15,000 or thereabouts, was collected by the trustee as fire insurance and for sometime the trustee had difficulty in obtaining sufficient income to pay the widow the annual sum of *43 $1500. provided for her in the will, not to mention taxes, and general upkeep charges. However, not long after the buildings had been destroyed by fire this real estate was sold under authority obtained from this court and the only real estate now forming part of the estate consists of the homestead and the unimproved land or building lots above mentioned.
The only personal property in the estate now appears to be the household goods and furnishings in the possession of the widow under the terms of the will. The unimproved real estate, or at least the major part of it, has not been sold and this, therefore, still remains as an asset of the estate. The proceeds of the fire insurance and the sale of the ground upon which the office building and public hall stood form, in the main, the fund now invested and carried as real estate principal. This fund has produced for a number of years sufficient income to meet essential upkeep charges of the homestead and the vacant lots and the $1500. annuity to the widow, although it is contended that the homestead needs certain improvements and repairs that could not be met out of the income.
The decedent, in his will, gives his entire estate , consisting of personal property and real estate as above indicated, “unto my hereinafter named Executor as trustee” (he names Joseph W. Moyer as executor) upon the following trusts: (a) the payment of his debts and funeral expenses, (b) th payment of a legac}'- of $5.00 to each of his children, George W. Slater and Bessie Slater, (c) the payment of an annuity of $1500. out of the net income of his estate to his widow, Clara K. Slater, during her life or widowhood, (d) the erection of a window in the Second Presbyterian Church of Pottsville as a memorial to his father and mother, to cost not more than $3,000. and (e) the establishment, after the death or remarriage of his wife, of a home for indigent old ladies.
Both of the children of decedent renounced the legacy of $5.00 given to them in the will. The testator provided that this legacy should be in full of each child’s share in his estate. Shortly after filing their respective refusals to accept these legacies, the children brought ejectment proceedings in the Common Pleas Court of this county whereby they sought to recover possession of the real estate of which testator died seized, there contending that the will, containing, as it docs, a charitable bequest, was not attested in accordance with the provisions of the Act of 1855. Their specific contention was that Joseph W. Moyer, one of the attesting witnesses and executor and trustee under tbe will, was not a disinterested witness. A non-suit was entered and an appeal to our Supreme Court followed, reported in Slater v. Moyer, 245 Pa. 60. The opinion was to Mr. Justice Brown and this is said:—
“The will had been executed by the testator in the presence of two witnesses, had been duly admitted to probate and was a valid disposition of his estate for the purpose of paying his debts and funer *44 al expenses and the annuity to his widow. Whether its provision creating the charity must fail by reason of his disregard of the statutory requirement as to the execution of a will bequeathing or devising an estate in trust for religious or charitable uses, is an entirely different question, to be passed upon when it arises. A will containing among other provisions, one for religious or charitable uses is not void, under the Act of 1855, if it is not attested as the act requires; it is only the religious or charitable bequest or devise that fails (citing authorities). The question of the right of the appellants to the possession of the real estate left by their late father cannot arise during the time he has directed his executor to hold it for the purpose of providing an annual income for his widow. The net income from it may or may not be at all times sufficient to pay her the annuity of $1500, but, without regard to this, until she remarries or dies, the title to all of her husband’s real estate, and the right of possession of the same, subject to the leases made by him, will be in his executor. Upon the remarriage or death of the widow, appellants may, in a proper proceeding, raise the question of their right to. take the real estate of which their father died seized, on the ground that his disposition of it to a charity is void under the Statute. If the charity be then declared void, they will be entitled, as heirs of their father, to take the land intended for it.”
At the audit of the second account of th trustee another attack was made upon the validity of the charitable bequest or devise. The two children filed exceptions to the decree of this court awarding the balance shown by the second account to the trustee, Joseph W. Moyer, for the purpose of providing the annual income payable to the widow. The exceptions were not sustained and an appeal again was taken to the Supreme Court, reported in Slater’s Est. 265 Pa. 88. The contention of the two children was, again, that the devise or bequest to charity is void because Joseph W. Moyer, one of the subscribing witnesses, was not a disinterested witness, and that, therefore, there is an intestacy as to the entire residue of the estate which the testator so gave to charity, and because of this intestacy for the reason alleged, the two children became the owners of the entire residue subject to the rights of the widow and creditors.
Mr. Justice Stewart delivered the opinion of the court and, as to the contention of appellants that an intestacy resulted from failure of the charitable bequest, and there being no residuary legatee or de-visee, so much of the estate goes to the heirs, who would be the appellants, this is said :—
“This would be entirely correct assuming the charitable bequests to be void. The auditor and the court below were in entire agreement. that the balance due from the executor on the account filed should be reserved to secure to the widow the payment of the annuity given her by the will. We do not understand that this finding is objected to on any other ground than that, if appellant’s contention with re *45 spect to the invalidity of the charitable bequests were to be sustained; so much of the estate as was devoted to the charities became vested in the heirs at law, not at the time of such adjudication, but immeda ately upon the death of the testator, for it was then, if ever, as to the-charitable bequests, that the will was void; and that testator’s children have, therefore, a vested interest in the estate, and have a right to protect the estate from the time it was created. The right of the appellants as heirs at law of the decedent to appear in the proceeding before the auditor and the court is not to be questioned, whether their purpose in so doing, as they claim, was to protect the estate, or to ask a determination by the court of the questions they raised as to the failure of the charitable bequests for the reasons indicated. So much may be conceded. The jurisdiction of the court was not only ample but exclusive with respect to both features of the controversy, and the standing of the appellants to urge their present contention upon the consideration of the court on their own behalf is no less clear; but the power of the court in the exercise of its legal discretion to decree as it did upon the balance appearing to be due on the account of the execut- or, and declining in this particular proceeding to pass upon the question of the failure of the charitable bequests in his will is equally clear.”
The proper time for the determination of the question whether a testementary charitable bequest is void, is when the question of the distribution of the estate arises, (Slater’s Est. 265 Pa. Supra), and upon this question the court said, in addition to what has been quoted above: — p. 93 — “While the decree segregates the balance of the account to meet a contingency which except as provided against, would most likely disappoint the widow in her annuity, the amount set apart yet remains an integral part of the estate. Final distribution of the fund yet remains to be made. This was in exact accord with the provisions of the will which gives to the trustee the full and exclusive control and management of the entire estate until the widow’s interest is terminated by her remarriage or death, to conserve the same for the protection of such interest. Carson’s Est 241 Pa. 117, so much relied on by the appellants, decides nothing to the contrary of what we have here said. Counsel overlook the clear distinction between the cases. In the earlier cases the charitable bequest so challenged was of the testator’s entire residuary estate in regard to the expenditure of which he gave minute directions. The register was there asked to deny probate of the will on the ground that it had not been executed in accordance 'with the requirements of the Act of April 26, 1855. This he declined and admitted the will to probate. An appeal was taken to the Orphans’ Court and the decree of the register was sustained. On appeal to this court, the only question at issue was the right and power of the register and the Orphans’ Court to refuse probate of a will otherwise properly executed on the ground that it contained a charitable bequest and had not been attested by two disinterested witnesses. We held, quoting from the opinion delivered by the present Chief Justice: “The probate of a will *46 without regard to its provisions is one thing; distribution of the estate of the testator in accordance with its terms is another. Distribution is for the court alone, and, on the distribution, and not before, is the validity of the provisions of the will to be passed upon.” For which conclusions many authorities are there cited. This follows at the conclusion of the opinion, and it is upon the expression of view here contained that appellants chiefly rely. 'Whether the assailed charity is void, because the will had not been so executed, is a question to be determined on distribution, and an opportunity will be given these appellants to raise it and have it passed upon the adjudication of the second account. The court below can then be asked to determine whether the directions of the testator as to his residuary estate are to be carried out during the life of his widow. There is no reason why the question of the validity of the charity should be postponed until after her death. If it is void, it was void from the time of the testator’s death, and, if so, what was intended for it will go, not as his will has directed but where the Act of 1855 declare it shall go.’ Tt is quite evident that what is there said was not intended as a statement of general rule applicable to all cases where the validity of a testamentary charity is challenged. What the court had in mind was the particular will then under consideration. No reason was discoverable from the testator’s will why, should the charity fail, distribution of the estate should be delayed until after the widow’s death. The heirs upon whom the will would cast the inheritance were all known and no provision or direction of the will, barring those related to the contemplated charity, would be defeated or disappointed. Here it is far otherwise. This testator, by the second item of his will, gave his entire residuary estate, after the payment of his debts and funeral expenses and specific legacies, to his executor, as trustee, certain defined trusts, one of which was to pay out of the net income therefrom to his wife the sum of $1500. per annum ‘for and during her natural life or so long as she remains my widow’. Then by item seven he directs ‘Subject to the payment of my debts, funeral expenses and specific legacies as aforesaid, I order and direct my herein mentioned execut- or and trustee to keep and maintain my entire estate, real and personal, including the proceeds of my unimproved property, if sold by him, intact, and to invest, rent, manage and keep my improved real estate in good condition and repair, always to the best interest and advantage of my estate, and to collect and invest and reinvest the interest and income thereof, and any balance of interest or income remaining after the payment of bequests, expenses, insurances, repairs and installments herein by me directed to be paid my wife, such balance shall from time to time be added to the body or corpus of my estate and be invested and reinvested as part of the principal thereof.’ Following this provision, we find this further direction, “Subject to the foregoing provisions of this, my will, after the death of my said beloved wife, or in the event of her not accepting the provisions of this my will in her behalf or for her benefit, or in the event of her marrying again, then and in either such event I give, bequeath and devise all the rest, residue and remainder of my said estate, real and person *47 al, whatsoever and wheresoever, to my herein named executor as trustee, and his successors in trust as aforesaid, with full power and authority to carry out and execute’; then follows a description of the charitable trust, the sufficiency and legality of which these appellants would now assail. These provisions are too plain to admit of misunderstanding as to their purpose. They are the full equivalent of an express direction that the trust created by the will covering the entire estate was to continue until the remarriage or death of the widow; it was upon the happening of one or the other of these events that the charitable bequests, in what remained were to take effect. Failure of the charitable bequests could have no effect on these earlier provisions of the will, — the creation of the trust and the directions in regard to its continuance. (The underscoring is ours.) This was made very clear in Slaer v. Moyer, 245 Pa. 60***The law governing the present case could not be more clearly expressed than it is here, and the opinion answers negatively every question raised by the appellants in their present contention. It is too patent to call for any discussion that what is there said as to the real estate applies with equal force and effect to the personal estate.”
We thus quoted at length from the opinions of our Supreme Court in this same estate for the reason that the primary question here involved, namely, the right to attck the validity of the charitable trust, is so fully covered in these opinions.
The present plan of approach differs in some respects from the two previous attacks upon the validity of the charitable trust. Although it has been definitely and conclusively held that the validity of the charitable trust in this case cannot be passed upon by this court until final distribution is before the court, another attack is made upon the validity of the same charitable trust but this time it is made by the trustee himself upon the ground that the estate is now inadequate for the establishment of the type of home directed to be established by the testator in his will and that, therefore, distribution should be made presently. Attached to the petition and made part thereof is an agreement signed by Clara K. Slater, the widow, George W. Slater, the son, P. B. Roads, Administrator of the Estate of Bessie Slater Allen, (the daughter) presumed decedent, and the Second Presbyterian Church (the latter having joined by reason of the provision in the will for erection of a memorial window) wherein these parties “agree”.
“2nd. That the trust created by the decedent in and by his last-will and testament for the establishment of the Anna S. Slater Second Presbyterian Church Plome for Indigent Old Ladies, either by his executor and trustee or the Second Presbyterian Church of Pottsville, be and the same is hereby and herewith abrogated, dissolved and entirely made void and abandoned for lack of adequate funds with which to establish and maintain same” (and then follows a release, exonerating and discharging the executor and trustee)”.
*48 “3rd. That for the purpose of ending litigation, settling finally-said estate and distributing the same to and among the parties directly and indirectly interested therein, either under the terms of said last will of decedent, or the intestate laws of the Commonwealth, or by reason of their relationship to decedent by blood or marriage, or in any other manner, the following distribution and disposition of said entire estate, real, personal, and mixed, is hereby agreed upon in lieu, place and stead of the distribution and disposition of said estate provided for and directed in said last will of decedent, any further income since said account to be distributed on the same basis to wit:” and then follows a schedule of distribution of the entire estate, real and personal, in which and whereby the memorial window is provided for, and the widow is to receive slightly over one-half of the entire estate and each of the two children is allotted somewhat less than one fourth each.
If the agreement just referred to could measure up to the requirements of the Act of 14 April, 1931, P. L. 29, amending the Act of 18 April, 1853, P. L. 503, pointing the way to settle and end a trust-created with remainder over to charitable purposes, we would have a situation in which the rule laid down for this estate by the Supreme Court, as hereinbefore quoted, might not apply. However, that act requires that all parties in interest must be given due notice of the proposed termination and all must join in the agreement. It is quite apparent in this case that the charity itself is not a party to the agreement and the Act of 1931 certainty contemplates that the charity should be a party. There are two reasons at least why the charity is not a party to this agreement “terminating” the trust; one is that under the terms of the will the trust for charity cannot become operative until the death or remarriage of the widow, and the other is that the charitable trust has been declared, in the agreement itself, to be invalid because of inadequate funds, hence these could be no charity in existence to join in the agreement.
Counsel for the Second Presbyterian Church of Pottsville contends that it can and does act for the charity. We cannot subscribe to this view. The testator, in his will, provides that, upon the death or remarriage of his widow, his residuary estate is to be transferred to this Church to be managed by it as a charitable trust, and he further provides that if the Church for any reason, refuses to accept the gift and the trust, then his trustee is to organize the charity. The church, back in 1913, accepted the trust but in 1931 it rescinded its former action and renounced the trust. It is true the resolution sets forth as grounds for the renunciation that the amount of the estate, in the judgment of the officials of that Church, is insufficient for the charitable purpose. Regardless of this reason assigned by the officials of this Church, the point is that it renounced the trust and, therefore does not in any form represent the charity nor can the Church, under the circumstances, speak for the charity. Besides, the charit *49 able trust can function, if at all, only after the death or remarriage of the widow.
It is quite obvious that the parties to this agreement cannot by a mere wave of the hand declare the charitable trust terminated. The only way in which this agreement can have a standing now would be for this court to assume, either that all the parties in interest have joined in the agreement (and obviously the charity itself has not joined), or, that the charitable trust is void for the reason indicated in the agreement. Either of these assumptions would be violent ones, to say the least, under the facts here prevailing.
We have a mandate from the Supreme Court that the validity of the charitable trust cannot be determined by this court until the time for final distribution arrives. That time will arrive when the widow dies or remarries. The parties now before the court — and they include all parties in interest except the charity — are here in an endeav- or to accelerate the time of final distribution by contending that the estate is not large enough to establish the charitable trust, hence it should now be declared void. Two unsuccessful attempts were made to upset this charitable trust on the ground that one of the witnesses to the will was not a disinterested witness. In each instance the court refused to pass upon the validity of the charitable trust because the time for distribution had not arrived. Does the present application have a better standing? We think not. In addition (if in fact anything additional is necessary) to what the Supreme Court already has said in this estate, we cannot entertain the petition of the trustee and the agreement of the heirs, for the following reasons:
The petitioner is the trustee under the will. His duties are charted for him in that instrument. The records show that his administration of this estate over its many years of activity is above criticism and reproach. The mandate of the testator is — and the trustee has accepted this mandate — that he hold this estate intact during the lifetime or widowhood of Clara K. Slater, decedent’s widow, pay her $1500. annually out of the net income, and after her death or remarriage, he as executor and trustee, virtue officii, is to establish the home for indigent old ladies. That home is not to be established during the lifetime or widowhood of the widow. The testator expressly so directs if his widow does not take against the will. She has elected to take under the will. How can the trustee, or anyone else, for that matter, say now that there are insufficient funds on hand to establish a home that under the will is to be established at some future date, certain to be reached but entirely uncertain as to when it will be reached ? There is over $64,000. in the hands of the trustee now, together with unsold real estate in the form of building lots, and the homestead. As many as twenty jrears may elapse before the time arrives for establishing this home. No one knows. Economic and social conditions change as the world moves on and we have learned to know that quite radical changes (at least some people so view *50 them) may occur in a comparatively short space of years. At any rate, it is quite obvious that the trustee is asking this courr to say that a certain amount of money is now inadequate to establish the home provided for in testator’s will when in fact the time for establishing that home lies in the dim future.
Of course, it could be urged that the widow joined in the agreement for immediate distribution, thereby revoking her prior election to take under the will, and thereby also making it unnecessary for the trustee to hold the estate intact for her any longer. She does not specifically revoke nor ask for revocation of her prior election to take under the will but the fair inference for her joinder in the agreement is that such joinder is in effect an indication that she has now changed her attitude toward the will. If the bequest to charity were now held to be void for the reason alleged then, as we said before, the only thing standing in the way of final distribution would be the life estate of the widow. It is apparent that she joined in the agreement under the assumption that the charitable trust is void; the agreemnt would be a nullity otherwise. For if the charitable bequest, notwithstanding inadequate funds, was found to be of the type protected by the Act of 1855 and operative under the cy pres doctrine, the widow would then say that her life estate must continue under the terms of the will and her election to take under that will.
Now this is what the testator says as to his widow:—
“and I order and direct that in case my said beloved wife shall not accept the provisions of this my last will and testament herein made by me for her benefit, or shall not accept the legacies herein given and bequeathed for her use, but shall at any time (the underscoring is ours) renounce the same, or shall prosecute or join in prosecuting any action to invalidate, annul, make void, or set aside this my last will and testament or any provisions thereof on any ground whatever, or shall prosecute any action or suit for dower or other statutory rights or claims or for any other portion or part of my estate, real or personal other than that I have herein given, devised and bequeathed for her benefit, or shall marry again, then, and in either such event, all legacies, provisions and bequests herein contained and by me herein made and given for her use and benefit or intended so to be, shall by the happening of such event be made void and thenceforth cease, determine and be at an end, anything herein contained to the contrary not withstanding, it being my firm intention that the provisions herein made for the benefit of my wife shall, if accepted by her, be in full of all her claims and demands on my estate, and if not so accepted by her, that then whatever the intestate laws of the Commonwealth allow her as my widow, shall likewise be in full of all her claims and demands on my estate.”
If the joinder of the widow in the agreement is in effect a withdrawal of her previous election to take under the will, can she so *51 change her attitude by merely signing a paper? The purpose of a statute fixing a time within which a widow is required to elect whether she will take under or against her deceased husband’s will, is to promote certainty in the settlement of estates, and it must be so construed as to further that purpose. Daub’s Est. 305 Pa. 446. In Bailey’s Est. 285 Pa. 408, the court said (p. 413) “If, as was said in Beck’s Est. 265 Pa. 51, 54, the intention of the Legislature was to promote certainty in settlement of estates, we would fail to carry out the spirit of the act by promoting a revocation of an election a long time after it has been made, with full knowledge of all the facts and for reasons such as are given in the present case. To do so is a step toward promoting a revocation for any reason or for no reason except a mere change of mind. The effect of such action would make an election, filed before the expiration of the two year period, without binding force so far as title to property is concerned.” A widow’s election to take under the will relates back to the time of testator’s death and her interest vests then. Fitzgibbon’s Est. 276 Pa. 105. In short, if we should now permit the widow to take against the will we would upset the title to all the real estate hereofore sold in this estate, for by taking against the will she would have the same interest in each specific piece of real estate as she would have had if her husband had died intestate. Dodd’s Est. 1 Wash. 236.
Then again, the testator here, in the clause just quoted, is quite emphatic in his direction that if his widow would not accept the provisions of the will made for her benefit but shall at any time renounce the same, or shall join in any action to invalidate or set aside any provision of the will on any ground whatever, she shall forfeit her rights under the will and shall receive only that which the intestate laws would give her. A provision in a will declaring the forfeiture of a legacy if the legatee, contests the validity of the will is valid. Friend’s Est. 209 Pa. 442. The doctrine that one who accepts a benfit under a will is stopped from asserting a claim repugnant to its provision is founded upon an equitable consideration. Plickman’s Est. 308 Pa. 230. We do not say that the widow’s joinder in the agreement has the effect of contesting the validity of the will, but we do say that to disregard a legal provision in testator’s will would be an invasion of the testator’s private dominion over his own property. Kate’s Estate. 282 Pa. 417. Under the terms of this agreement the widow is to receive over half of the entire state. We are not unmindful of the fact that if this charitable trust were declared void the heirs could, if they so desired, give the entire estate to the widow and in that way thwart the will of the testator. But they have not done that. They have agreed that she. shall take slightly over one half and they, the heirs, who were given but $5.00 each in the will, shall take about one fourth each. However, all of this is entirely contrary to the wishes of the testator, and are. his wishes and directions to be entirely ignored? It was no doubt his best judgment that an assured income to his widow for her life would be better for her than a lump sum bequest. She accepted that judgment. Shall we now upset this plan? Even if the *52 charitable bequest were void, and the life estate terminated, the widow’s interest under the intestate laws would be far less than the share set aside for her in the agreement.
Testimony was taken upon the question of the cost of establishing a home such as apparently contemplated in testator’s-will as well as upon the cost of operating such home. We received this testimony under the assumption then existing that this court could now examine into the validity of the charitable, trust. We were then not familiar with what had previously taken place in this estate or the appeals taken to the Supreme Court. The brief’s filed by counsel make but slight reference to these two appeals. It was only after research that we found that these practically rule the present application. For reasons herein stated, his testimony cannot now be considered.
The testator divided his will into two parts. In the first part he provided for the primary object of his bounty, his wife. He offered her an annual income of $1500. She accepted this offer. The corpus of the estate has proved sufficient to net her the annuity provided for her but all of the corpus is needed for the purpose and upkeep charges. He appointed Joseph W. Moyer as trustee to administer the estate for the benefit of the widow. In the second part he disposes of his estate to charity.- In no way is this charity to interfere with the estate given to the widow; in fact, as already stated he specifically directs that the charitable bequest shall not become operative until the death or remarriage of his wife, neither of which has happened. Shall we now write a new will for the testator and dispose of his estate in a manner contrary to the, legal disposition thereof made by him, legal at least in so far as the estate given by the widow is concerned? For a court to do so, under the facts and circumstances here prevailing, would indeed be just cause for men to wonder whether it is safe to make a will at all.
We regret to add that since the last hearing in this case Joseph W. Moyer, Esq., accountant here and trustee, died in his eighty-first year. This unfortunate occurrence necessitates the appointment of a successor trustee,. The life tenant, after notice to the other parties in interest, presented a petition to that end, and we appointed the Schuylkill Trust Company of Pottsville, Pennsylvania, to succeed the deceased trustee. Bond has been filed and has been approved. The balances may, therefore, be awarded to the substituted trustee.
For reasons hereinbefore given and particularly in view of what is said in Slater v. Moyer, supra, and in Slater’s Estate, supra, we conclude, as á matter of law
(1) that the time for final distribution has not arrived;
(2) that, therefore, the validity of the charitable trust cannot now be passed upon;
*53 (3) that the balances shown by the account in the hands of the trustee should be awarded to and retained by his successor in office, to secure to the widow the payment of the, annuity given her by the will, and for the other purposes in the will set forth;
(4) that the petition should be dismissed.
AND NOW, December 18, 1933, the, court having examined and audited said account, the same is confirmed absolutely, the petition for distribution, to the extent that it asks for distribution presently, is dismissed, and it is directed that the executors of the estate of Joseph W. Moyer, deceased trustee, pay and deliver to The Schuylkill Trust Company of Pottsville, Pennsylvania, substituted trustee, in trust for the. purposes in the will set forth, the respective balances shown by the account, as herein found, namely, personal property principal consisting of household goods and furnishings now in the possession of Clara K. Slater, widow, and valued, for accounting purposes, at $285.00; real estate principal, consisting of cash and investments amounting to $64,793.82, and re,al estate income amounting to $429.86 in cash.